# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 5 2021

CLERK, U.S. DISTRICT COURT
By_____
Deputy

Kimberly STARLING,                    :
                                      :
        Plaintiff                     :
                                      : **CIVIL ACTION NO. 4:21-CV-00688-O**
        v.                            :
                                      :
**David Allen Capital,**              :
                                      :
        Defendant.

## Defendant David Allen Capital, Inc's Answer And Motion To Dismiss Plaintiff's Complaint

**PLAINTIFF**

Kimberly STARLING
Through Attorney Amy Ginsburg
30 East Butler Pike
Ambler, PA 19002

**DEFENDANTS**

DAVID ALLEN CAPITAL, INC
1015 Troon
Highland, MI 48357

**Dated: June 15, 2021**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **Kimberly STARLING,** an individual, and a business owner | : : : | |
| Plaintiff | : : : | |
| v. | : : | CIVIL ACTION NO. 4:21-CV-00688-O |
| **David Allen Capital**, a Michigan Corporation, | : : : | |
| Defendant. | : : | |

## Defendant David Allen Capital, Inc's Answer And Motion To Dismiss Plaintiff's Complaint

**DAVID ALLEN CAPITAL**

BY: /s/ David Allen Rutz
1015 Troon,
Highland MI 48357

*Individual Representing Company*

**Dated: June 15, 2021**

**<u>Defendant David Allen Capital, Inc's Answer And Motion To Dismiss Plaintiff's Complaint</u>**

Defendant David Allen Capital, Inc ("DAC") hereby submits its Answer and Motion to Dismiss

Plaintiff Kimberly STARLING's  ("STARLING") Complaint.

<u>**ANSWER**</u>

**I.     INTRODUCTION**

DAC does not dispute that STARLING has brought this action against DAC, but **denies** that Plaintiffs have any lawful grounds for asserting such action, and **denies** all assertions made in the complaint.  DAC has attempted to resolve this with STARLING directly and then through her attorneys, but plaintiff has continued forward with this frivolous complaint anyhow - in hopes of prompting a settlement.

I am not an attorney, I am a business owner and I am representing my company.  I am not an expert of legal procedure.  However, as a matter of principle I will not make a settlement payment to Plaintiff (as she demanded and then threatened through email), as I did not, nor did anyone from my company make any illegal call as she is alleging. We do not, and never have used Telemarketing as a method for reaching clients. I tried to make sense and reason with the plaintiff over email and then through her attorney, but to no avail.  I have spent many hours researching and reading other similar complaints.  However, with no experience in legal writing or communicating with the court, I request consideration as you view this information, it's layout, etc.

Plaintiff Kimberly STARLING ("STARLING") brings this complaint purporting to assert

claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1), and under the Texas Business and Commerce Code, against the Defendants David Allen Capital, Inc. ("DAC"). STARLING's case leans on *her claimed consumer   protection, yet on a Business Telephone Number-for which she has no TCPA protection.* Secondly, she claims a call came from DAC, yet has provided  zero proof to this/these claims, and instead provides a caller ID and recording of the call via email to DAC that separates the caller from DAC completely as it was NOT a DAC number, nor was it a caller hired or contracted by or with any affiliation to DAC. The recording also demonstrates STARLING'S desire to continue talking to the caller obviously demonstrating that the nuisance the TCPA is designed protect was not occurring on her enjoyable conversation. This complaint is a nuisance of far greater measure to me, my company, and to the court and it is filed knowingly absent of cause.  Therefore this motion to dismiss should be granted.  This Frivolous law suit was and is a demand for settlement and is far more a nuisance to me as a business owners and than this false and alleged phone call.

STARLING claims to have consumer protection under the Do Not Call Registry, however she delivers no proof that the phone call(s) are affiliated with DAC .  She even recorded a call made from an individual, who she alleges is affiliated with DAC, yet the caller is calling from a phone number NOT associated with DAC, and even sounds like calling from a different country? STARLING asserts caller is directed by DAC, yet provides zero proof of such and all information presented in fact shows zero connection to DAC.  DAC has not hired or contracted anyone to make telemarketing calls. Likewise, the Complaint does not allege that DAC provided this presumed contractor with STARLING's phone number, or that the outreach resulted in STARLING taking out any loans with DAC benefitting from this as a result. Indeed, STARLING does not even allege to have ever received any documentation from DAC.

While STARLING attempts to bring this action based predominantly on TCPA violations and the allegations of direct or vicarious liability, she is exempt from TCPA protection and does not plead sufficient facts to meet the TCPA standards, and those of the Texas Business and Commerce Code. Instead, **STARLING's Complaint is but a collection of barebones and conclusory allegations that fail woefully below the *Ashcroft v. Iqbal* pleading standard, and must be immediately dismissed for the above reasons, as further detailed and argued below:**

**First**, according to the FCC, The National Do Not Call Registry applies <u>only to consumers</u>; business phone and fax numbers are not covered by The Registry. In an email to DAC, the phone number that STARLING alleges to have received the call at (817-689-6140 ), as she reports herself is also used for business (Compl. ¶¶ 14). Therefore, STARLING waived any consumer protection when using and advertising this number as a business line and thus, is not protected by the Do Not Call Registry. This business number is also exempted in the Telemarketing Sales rule. STARLING continues to allege that she is protected under the Telephone Consumer Protection Act (TCPA), which does not include business lines which are exempt from the consumer act. If STARLING's business number is on the Do Not Call Registry, she should not have this number listed there and should not be seeking protection on the national Do Not Call Registry. STARLING's entire complaint leans on this faulty protection under TCPA and Do Not Call Registry, and **therefor even though DAC makes no admission and vehemently denies making any such call, even if they did, STARLING has no consumer protection against this type of call, and this motion to dismiss should be granted,**

**Second** , although DAC did not make the alleged call as STARLING asserts, and even though DAC has never hired a telemarketing company, nor ever used telemarketing, autodialing, robodialing, assisted dialers or any similar, STARLING makes a feeble attempt to assert <u>direct</u> liability to DAC for these calls, yet STARLING does not allege any facts to support the inference that the call was made by DAC-which it was not. Indeed, STARLING does attempt to connect DAC to a Caller ("UNKNOWN CALLER") (Compl. ¶¶ 10.) and provided a caller ID phone number via email (which was not and has never been affiliated with or hired by DAC). While STARLING speculates that the call was made by a DAC employee or Agent (a theory that is not based on any facts), (Compl. ¶¶ 10.)  she does not offer any plausible allegations to suggest that UNKNOWN CALLER was an employee or agent of DAC. In fact, DAC does not employ or have any agent relationships with anyone who phoned from the UNKNOWN CALLER's ID. In an attempt to help STARLING see DAC was not involved, DAC did phone the number to try to determine who the caller was.  However, it went to a non set up voicemail.  This fact was also shared with STARLING during a good faith reaching out by DAC to STARLING after receiving the threat of lawsuit. However STARLING did not want to drop the complaint unless DAC would pay a settlement of $8,000.

In the recording provided by STARLING to DAC, STARLING also visited with UNKNOWN CALLER on the phone for several minutes acting interested in what the caller was offering.  The call apparently was not the nuisance STARLING purports and she was apparently trying to set up the caller for a future complaint.  At most, STARLING alleges that the call was made by someone affiliated DAC .  At best, STARLING infers UNKNOWN CALLER could have been an independent contractor or entity affiliated with DAC. Even though no facts were presented to support this, and no DAC records support this, Corporations are not liable for the

acts of their affiliates, unless the affiliates or corporations are mere alter egos. In re Portfolio
Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig., No. 11MD2295, 2014 WL 223557, at *2
(S.D. Cal. Jan. 8, 2014). Beyond creative labels, STARLING does not allege any facts to suggest
UNKNOWN CALLER was simply an alter ego of DAC, further putting STARLING's direct
claims to rest.

*Third*, STARLING's <u>vicarious</u> liability theories fare no better. STARLING claims DAC
willfully and knowingly engaged in illegal activities, yet does not allege any facts indicating that
DAC controlled the manner and means of the caller's marketing efforts. Absent these allegations,
STARLING cannot state a claim for authority *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443,
451 (9th Cir. 2018); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012),
*aff'd*, 582 F. App'x 678 (9th Cir. 2014).

Even if UNKNOWN CALLER was an independent agent of DAC, DAC requires pre-
approval of independent agents' own advertising materials. Moreover, DAC's policies, make
clear that agents are independent contractors who have no authority to hold themselves out as
agents for DAC, and who are themselves responsible for compliance with the law. Even if the
call did come from a DAC Agent (which it did not and no proof has been provided of such) and
if DAC pre-approved a script at issue (or provided training on common marketing techniques or
authorized the use of its logo by independent agents), this is still not enough to establish control.
The critical deficiency is that STARLING does not, and cannot, allege that DAC dictated the
caller's number of calls to be placed, the hours of operation, the equipment to be used, the phone
numbers to be called, or other means and methods for placing the calls. Due to these deficiencies,
and because the Court cannot credit STARLING's hodge-podge of conclusory statements

unsupported by facts, made "plaintiff called" or "upon information and belief," and lumping UNKNOWN CALLER and DAC together, STARLING's actual authority claim fails.

*Fourth,* STARLING's cannot make a ratification either. As an initial matter, it would fail because STARLING does not sufficiently allege actual authority. "The doctrine of ratification is not available unless the actor acted or purported to act as an agent on the person's behalf. *Kristensen v. Credit Payment Servs., Inc.,* 879 F.3d 1010, 1014 (9th Cir. 2018). In addition, STARLING did not plead any facts suggesting that DAC knew or should have known material facts about the caller's acts. Certainly, even if DAC had knowledge of UNKNOWN CALLER or their telemarketing activity in general (which it did not and does not)—even if that activity was conducted via an ATDS or with the prerecorded messages—is not sufficient to impute knowledge of TCPA violations. STARLING's ratification claims would also fail because STARLING did not ultimately take out any loans from any DAC source, and the call at issue did not result in any benefit to DAC.

*Fifth,* STARLING cannot make a claim for protection under Texas Business Commerce Code (TBCC) against DAC for the same reason disclosed above. STARLING has not demonstrated that DAC is the caller or is affiliated with the caller in any manner. In fact, the phone number provided as the alleged caller (628.333.5242) is a California caller and unaffiliated with DAC who is a Michigan based company. Furthermore, STARLING provides no evidence or claim of who called from 628.333.5242, nor proof by STARLING that she verified UNKNOWN CALLER in fact had not obtain the registration certificate required by the Texas Business Commerce Code. Absent of caller identity, certification cannot be verified and one cannot claim relief.

**Sixth,** STARLING claims General Damages under TCPA and Texas Business Commerce

Code due to the the nuisance she has received from this matter.  STARLING has not supported her TCPA violation complaint, or her Texas Business Commerce Code claim, and any such reward should not be given.  While considering this request DAC finds it ironic that STARLING who claims to have received nuisance calls, pivoted quickly and recorded the call, and invited extra time expenditure of her own by communicating with the caller at length, even answering questions and never saying "why are you calling me" or "do not call me" or anything of the like. STARLING has no business phone protection under the TCPA, nor has she provided adequate connection between DAC and UNKNOWN CALLER as outlined in the paragraph above and any such claim therefor must be denied.  Lastly,    the time requirement and nuisance that STARLING incorrectly claims to have encountered at the hands of DAC, she and her attorney have placed right back on DAC in far higher proportion and multiple.  For me to have to receive, review, learn, clear up multiple emails for STARLING and her Attorneys, and then have to do the diligence to prepare this motion after my civil and helpful email responses with STARLING were ineffective, and now me having to research to defend our company about these matters, contact the court to learn the process of replying to this suit, as well as researching appropriate responses has already totaled over 100 hours of dedicated time.  **This frivolous complaint and attempt for settlement is a nuisance and warrants reward to me for damages.  If this case continues DAC will review its options to seek damages as this has been a very costly endeavor to our small company.**    All of this after an email plea from David Rutz at DAC to STARLING to assert common sense to this complaint personally and through her attorneys. DAC did not make the telemarketing calls to STARLING, nor did any agent or employee of DAC and although STARLING claims nuisance by her, to the contrary, a nuisance has been placed on DAC from this frivolous case.

## ALLEGATIONS IN THE COMPLAINT

Although STARLING's Complaint is 57 paragraphs long, it consists in large part of recitations of the applicable legal standard, conclusory allegations regarding DAC's alleged willful and knowing TCPA and TBCC violation "upon information and belief" and in-the-alternative allegations not backed by any facts. Out of the entire Complaint, only two paragraphs describe STARLING's actual experience as relevant to this case. STARLING's pleading is a quintessential example of conclusory and speculative pleading that is not permitted under *Iqbal*.

*Allegations Regarding DAC.* DAC, the defendant in this case, is an organization that connects business customers with various products and services offered by independent business service providers and business capital providers.   DAC has been in business for over 5 years working with small business owners, offering them small business funding and other services (payment processing and healthcare).   DAC collaborates with independent agents and other companies to match business clients with potential funders, or service providers who are unaffiliated with DAC. The independent agents and DAC are paid commission for the funding or services they successfully match to a satisfied client.  DAC has records of all of its independent agents including name, address, phone, email and has NO record of UNKNOWN CALLER nor anyone with the phone number used by UNKNOWN CALLER when contacting STARLING.

*Allegations Regarding The Call At Issue.* STARLING alleges that the calls she received were placed using an automatic telephone dialing system ("ATDS"). (Compl. ¶ 20-31.), yet provides no proof that it was an automated system or automated call.   According to the Complaint, STARLING alleges DAC "acted through its agents or employees" (Compl. ¶ 10) , and invited STARLING to discuss business loans (Compl. ¶ 18). STARLING then took it upon

herself to spend more time and conversed and recorded the call with UNKNOWN CALLER. Notwithstanding several conclusory allegations, <u>STARLING does not present any proof the phone call originated from an automated dialer, nor that it was from DAC, or directed from DAC.</u>

DAC finds it "convenient" that STARLING left the transcript of the recording out of the complaint. I have heard it and it obviously shows no nuisance and even and enjoyable conversation with apparent interest in what the caller was offering. STARLING was aware of this before filing the complaint but still decided to withhold this information. Was it because UNKNOWN CALLER was obviously not an employee or agent of DAC, or was it because the call did not appear to be a nuisance at all?

Despite UNKNOWN CALLER making the call himself, STARLING speculates that UNKNOWN CALLER was acting on behalf of DAC to make illegal calls, (*Compl.* ¶¶ 10) STARLING also alleges that UNKNOWN CALLER was either an employee of DAC or a contractor for "DAC." The Complaint does not articulate any facts to support any of these allegations and are more hunches are guesses from STARLING,

The call originated from the telephone number 628.333.5242, per email to Rutz, STARLING does not allege that she ever returned a call to determine originators of the call, or that she applied for, let alone received, a loan. Nor does STARLING offer any allegations regarding how the caller identified STARLING's number, yet claims DAC stored it, provided it , or used a computer system to randomly dial it (*Compl.* ¶¶ 20-26.).

*If the call was placed by an independent agent of DAC, even though no facts support this,* DAC requires all new agents of must complete and Independent Agent Application. The Application, amongst other things requires that independent agents abide by all local, state, and

federal laws. The Application emphasizes that DAC takes considerable precautions to make sure that all of its marketing materials and marketing efforts used by independent agents comply with the law.    Also, the seriousness is demonstrated in the language that any violation may lead to "termination" of independent agent status.

Pursuant to the terms of the application and agreement, the independent agents are responsible for complying with the law.  Here are four separate paragraphs from the independent agent application and agreement:

8. I agree to keep accurate records and **to abide by all federal, state, and local laws and regulations governing the sale or solicitation of the products and services marketed by DAC** including, but not limited to, any and all permits and licenses required performing under this Agreement. **I will not take part in "robo-calling" of clients**.

12. I will not make any false or misleading statements about DAC or its products, marketing program, or Compensation Plan. **I agree that I will operate in a lawful, ethical and moral manner and will not engage in or perform any misleading, deceptive or unethical practices. In the event that I violate any of these conditions, my position may be terminated** without further payment or compensation of any kind. If my actions cause harm to DAC, I am liable for those damages.

14. I acknowledge that DAC expressly reserves all **proprietary rights to the company name, logo, trademarks, service marks** ("Proprietary Marks") and copy- righted materials. I understand, acknowledge and agree that any monies, which I pay DAC are in consideration of my receiving a non-exclusive license, during the term of this Agreement to use the Proprietary Marks of DAC in conjunction with the marketing program provided to me. I further agree that **I will not use DAC's Proprietary Marks in any form whatsoever except as permitted in writing by DAC.** I understand that I may not photocopy or duplicate any materials provided by or purchased from DAC with the exception of documents available to download from the DAC Independent Agent Resource Center.

16. I understand that as an Independent Sales Agent, I am free to select my own means, methods, and manners of operation and that I am free to choose the hours and location of my activities under this Agreement subject only to the terms of this Agreement. **However, I must abide by all local, state, and federal laws.**

Among  other  relevant  provisions,  the  agreement  states  that  independent  agents  are

"independent agents" and are not employees of the Company.

**MOTION TO DISMISS STANDARD**

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must set forth facts that raise a "**plausible inference**" that the defendant inflicted a legally cognizable harm upon the plaintiff. *Ashcraft v. Iqbal*, 556 U.S. 662, 682 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (**a court must disregard "formulaic recitation of the elements of a cause of action"). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."** *Iqbal*, 556 U.S. at 678. **The factual allegations in the complaint must be sufficient "to raise a right to relief above the speculative level" such that the claim is "plausible on its face."** *Twombly*, 550 U.S. at 556-57. **The court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations.** *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). **If the complaint "makes only vague, conclusory statements" that merely "parrot back" the language of the statute the defendant is alleged to have violated, it does not state a plausible claim for relief.** *O'Donovan v. CashCall, Inc.*, No. C 08-03174, 2009 WL 1833990, at *11 (N.D. Cal. June 24, 2009).

**Where a complaint pleads facts that are merely consistent with a defendant's liability, <u>it stops short of the line between possibility and plausibility of entitlement to relief</u>.** *Somers v. Apple, Inc.*, 72 F.3d 953, 959-60 (9th Cir.2013). **<u>Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive</u>.** *Id.*

## ARGUMENT

## I.  STARLING DOES NOT QUALIFY FOR PROTECTION UNDER TCPA DO NOT CALL REGISTRY

The TCPA Do Not Call Registry is created to protect consumers from calls to their home and their mobile phones. STARLING alleges she received the call in violation at a number she reportedly has added to the Do Not Call Registry. However, that number is also used as her business line. Therefore, STARLING exempted herself from any consumer protection on this business number when using and advertising this number as her business phone line. This number is not protected by the Do Not Call Registry. This business number is also exempted in the Telemarketing Sales rule. and she should have never registered it with Do Not Call Registry. STARLING continues to allege that she is protected under the Telephone Consumer Protection Act (TCPA) even though the act does not include business lines which are exempt from the consumer act. If STARLING's business number is on the Do Not Call Registry, she should **not** have this number listed there and should not be seeking protection on the national Do Not Call Registry. STARLING's complaint leans on this faulty protection under TCPA and Do Not Call Registry, and therefor this motion to dismiss should be granted.

## II.  STARLING FAILS TO STATE DIRECT LIABILITY CLAIM AGAINST DAC.

DAC has no knowledge of UNKNOWN CALLER or any relation with UNKNOWN CALLER, Never the less, The TCPA make it unlawful for any person in the United States to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" 47 U.S.C. § 227(b)(1)(A)(iii). The plain language of the statute, along with

the TBCC assign civil liability to the party who **"makes"** a call. *Thomas*, 879 F. Supp. 2d at 1084.

### A. DAC Is A Separate Corporate Entity Who Has No Knowledge of and That Is Not Directly Liable For "UNKNOWN CALLERs" Actions.

STARLING alleges that the caller at issue was directed by DAC. The Complaint does not, however, allege that the person who *called* STARLING was DAC, Moreover, STARLING alleges that the call at issue was part of a fully automated process and made using the automatic telephone dialing system. (*Compl.* ¶¶ 20-26.) STARLING herself does not know who made the call, claiming only that she "believes" the caller was acting on behalf DAC . Without any fact-based allegations on that issue, STARLING cannot possibly maintain a claim against DAC on any basis for "making" this call.

Even assuming that UNKNOWN CALLER was an independent agent of DAC who made the call, DAC is still not directly liable. Throughout his Complaint, STARLING attempts to paint a close connection between UNKNOWN CALLER and DAC . Creative labels aside, however, STARLING does not allege that UNKNOWN CALLER is the same corporate entity as DAC (or that it is, for example, just another name for DAC). Instead, STARLING concedes, as she must, that UNKNOWN CALLER was directed by DAC . Even if UNKNOWN CALLER were a contractor of DAC, DAC would still not be liable for UNKNOWN CALLER's alleged TCPA violations, based on the well-established "general rule [that] a parent company is not liable for its subsidiary's actions." *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11MD2295, 2014 WL 223557, at *2 (S.D. Cal. Jan. 8, 2014) (announcing the same rule in a TCPA case).

The one exception to this principle, of course, is the concept of *alter ego* liability. In

order to be liable for subsidiary's TCPA violations, the parent must control the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015). STARLING does not reference this theory, plead any of its required elements, or include any facts supporting each element. For example, STARLING does not allege that DAC treated the assets of UNKNOWN CALLER as its own, that it commingles its funds with UNKNOWN CALLER's monies, that it controls UNKNOWN CALLER's finances, or that UNKNOWN CALLER is undercapitalized or the separateness of UNKNOWN CALLER has ceased. *Wady v. Provident Life & Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (rejecting *alter ego* theory where the complaint failed to plead facts to satisfy these factors). Further revealing his lack of any intent to pursue the *alter ego* theory, STARLING does not name UNKNOWN CALLER—which would have been a necessary party for any *alter ego* theory—as a co-defendant in the case. *Wilson v. Metals USA, Inc.*, No. CIV. S-12-0568, 2012 WL 5932990, at *6 (E.D. Cal. Nov. 27, 2012). In sum, the *alter ego* theory is either not implicated or not adequately pled.

## B. STARLING's Allegations Regarding UNKNOWN CALLER and connection to DAC are Speculative And Cannot Support Direct Liability Against DAC.

To begin with, STARLING's conclusion that UNKNOWN CALLER was employed by DAC lacks facial plausibility. The speaker on the call phoned from a non DAC phone number, and STARLING does not offer any facts to justify her peculiar suspicion that UNKNOWN CALLER was employed by or directed by or working for DAC .

None of these allegations is factually suggestive of UNKNOWN CALLER being an employee of or directed DAC. *Somers*, 729 F.3d at 960 (holding that it is not enough that the

complaint is "**factually neutral**"; rather, it must be "**factually suggestive**").  Indeed, the entire Complaint presumes that UNKNOWN CALLER is or is not an employee and is premised on the theory of vicarious liability. Thus, the Court should disregard the sole conclusory "either-or" assertion in the Complaint regarding UNKNOWN CALLER being directed by or acting on behalf of DAC.

## II.   STARLING FAILS TO STATE A CLAIM FOR VICARIOUS LIABILITY AGAINST DAC.

In addition to direct liability, the TCPA permits imposition of vicarious liability based on federal common law of agency. *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (citing *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6586-87, ¶¶ 33-35 (2013)). There are three agency relationships that give rise to vicarious liability under federal law: actual authority, apparent authority, and ratification. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). STARLING's Complaint does not allege sufficient facts to satisfy any of these principles.

### A. STARLING Fails To Plead Sufficient Facts To Allege Actual Authority.

In the Ninth Circuit, actual authority is limited to "actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" *Jones*, 887 F.3d at 449 (citing *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017)). "Agency is not established when control may be exercised only as to the result of the work and not the means by which it is accomplished; in such a case an independent contractor relationship exists." *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845, 2017 WL 766548, at *6 (S.D. Cal. Feb. 28, 2017) (citation and alterations omitted). In order to establish actual authority, **the principal has to control the manner and means,**

rather than the results, of the text message campaign. *Thomas*, 879 F. Supp. 2d at 1085. "**Agency means more than mere passive permission; it involves request, instruction, or command.**" *Linlor v. Five9, Inc.*, No. 17CV218, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017).

STARLING's Complaint fails to allege *any facts* to suggest that DAC exercised control over the manner and means of the call at issue. STARLING relies on the assortment of conclusory allegations in an effort to hold together her deficient Complaint. But STARLING's allegations are not based on facts, repeatedly and impermissibly lump UNKNOWN CALLER and DAC together in an effort to meet STARLING's burden.  Stripped from the deceptive labels and conclusory allegations, however, the facts as pled in the Complaint are woefully inadequate.

### B.  STARLING Fails To State A Claim Of Apparent Authority.

STARLING's allegations with respect to apparent authority are equally deficient. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when that belief is reasonable and is traceable to a manifestation of the principal." *Naiman*, 2017 WL 5882123, at *12 (citing Restatement (Third) of Agency § 2.03). The ostensible authority of an agent cannot be based solely upon the agent's conduct. *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). It "can only be established by proof of something said or done by the [alleged principal], on which [plaintiff] reasonably relied," "to [plaintiff's] detriment." *Thomas v. Taco Bell Corp.*, 582 F. App'x at 679-80 (citing *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)); *Murphy v. Fullbright*, No. 12-CV-885, 2012 WL 4754730, at *4 (S.D. Cal. Oct. 4, 2012) ("The power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and belief is traceable to the principal's manifestation.").

Here, STARLING plainly does not allege that she relied to his detriment on anything that DAC did or said with respect to UNKNOWN CALLER or any other caller's authority. In fact, STARLING does not allege that she even knew or heard of DAC when she received the call at issue, STARLING suggests the speaker was acting on behalf of DAC but STARLING does not allege that she called UNKNOWN CALLER back, or filled out or submitted any form or application (again, without any reference to DAC). Although STARLING's own email discovery to DAC shows that UNKNOWN CALLER phone calls to STARLING did not use the caller ID or David Allen Capital or DAC or any other similar company name, Nor did STARLING suffer any detriment as a result of any purported reliance—she did not even apply for any loan!

STARLING does not allege that she heard of any agency agreements between DAC and it's agents and did not reasonably rely on anything DAC did to conclude that the speaker on phone was, indeed, DAC's employee or agent. "[A]pparent authority exists only with regard to those who *believe and have reason to believe that there is authority*; there can be no apparent authority created by an undisclosed principal." Restatement (Second) of Agency § 8 (1958). Because the Complaint plainly lacks any suggestion of STARLING's reasonable reliance on anything DAC said or did, the apparent authority claim must fail. *Thomas*, 582 F. App'x at 679-80 (dismissing complaint where plaintiff has not alleged that she "reasonably relied, much less to her detriment, on any apparent authority with which [the alleged principal] allegedly cloaked [the alleged agent]); *Linlor v. Five9, Inc.*, No. 17CV218, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017) (dismissing apparent authority argument where "Plaintiff does not allege that he relied to his detriment on something [alleged principal] did or said with respect to [alleged agent's] authority to send the text messages).

### C. STARLING Fails To Plead Facts To Allege Ratification.

STARLING's Complaint also fails to allege ratification. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas*, 582 F. App'x at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003); *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845, 2017 WL 766548, at *8 (S.D. Cal. Feb. 28, 2017). The doctrine of ratification is not available unless the actor acted or purported to act as an agent on the person's behalf. *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018); *see also Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845, 2017 WL 766548, at *8 (S.D. Cal. Feb. 28, 2017).

As explained above, *see supra* at Part II.A, STARLING failed to plead any facts to establish actual agency, and this deficiency is also fatal to STARLING's claims of ratification.

Likewise, even if a principal ratifies an agent's act, the principal is not bound by a ratification if it is "made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Kristensen*, 879 F.3d at 1014. A principal assumes the risk of lack of knowledge if "the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Id.*

Here, STARLING pleads no facts to suggest that DAC had actual knowledge of either UNKNOWN CALLER or another independent agent causing alleged violation of the TCPA, or knew of facts that would have led a reasonable person to investigate further. At most, the Complaint alleges that DAC illegally used a dialing system to contact STARLING.  Even if DAC knew that UNKNOWN CALLER or others used ATDS—and the Complaint fails to provide proof of such, or even existence of UNKNOWN CALLER as an agent of DAC—this

would not be the sort of knowledge that would prompt a reasonable person to investigate further. *See, e.g., Naiman*, 2017 WL 4813, at \*10 (prior lawsuit alleging similar violation does not demonstrate that defendant must have been aware of the alleged agent's offending conduct). In the Ninth Circuit, "the knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities." *Kristensen*, 879 F.3d at 1015. Futhermore, no one still has been able to identify UNKNOWN CALLER's existence or affiliation with DAC .

The ratification theory fails for one additional reason: STARLING does not, and cannot, allege that the call at issue resulted in any benefit to DAC. STARLING does not allege that the call resulted in the loan being issued to STARLING and DAC receiving any commission or other benefit as a result. STARLING's ratification theory fails for this additional reason. *Arbon Valley Solar LLC v. Thomas & Betts Corp.*, No. 4:16-CV-00070, 2017 WL 5613009, at \*6 (D. Idaho Nov. 21, 2017) (dismissing the complaint based on ratification theory where plaintiffs have not alleged that defendant "received, accepted, or retained any benefits from the contract"); *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-CV-05019, 2016 WL 1427648, at \*2 (N.D. Cal. Apr. 12, 2016) (dismissing ratification theory where the complaint did not allege any benefit to the defendant from the alleged activity). In sum, the ratification theory must be dismissed as a matter of law.

Finally, even if DAC knew of an alleged use of an autodialer, "the knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities." *Kristensen*, 879 F.3d at 1015; *see also Kristensen v. Credit Payment Servs. Inc.*, No.

2:12-CV-00528, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d 1010 (9th Cir. 2018) (although defendant may have known that the alleged agent used texts to generate the leads, the evidence was not sufficient to show defendant's control over means of transmission or methods used by the agent to carry out its text messaging campaign); *Meyer v. Capital All. Grp.*, No. 15-CV-2405, 2017 WL 5138316, at *11 (S.D. Cal. Nov. 6, 2017) (where defendant hired third-party vendors to send faxes and make telemarketing calls, plaintiff did not necessarily establish the requisite control over the methods and means vendors employed to accomplish these tasks). STARLING does not, for example, allege that DAC provided its independent agents with numbers to contact, knowing that the numbers were not scrubbed for compliance with the Do Not Call lists, or that the contacts did not consent to telemarketing calls. In sum, STARLING has not pled sufficient facts to suggest that DAC knew of, condoned, or required or authorized any activity prohibited by the TCPA.[1]

## 1.  **DAC Makes Clear That Its Independent agents Are Independent Contractors And That DAC Does Not "Dictate Their Selling Methods."**

While the Complaint is unclear who UNKNOWN CALLER is, or the exact status of employee or agent of DAC, DAC's Independent Sales Agent Application and Agreement makes clear that its agents are are "independent sales agents" and not "employees or legal owners.". This is paragraph three of the DAC Independent Agent Application.

> 3.I agree that as an ISA, I am responsible for determining my own business activities and that by agreeing to these terms, I am not an employee or legal owner of DAC.

In addition, DAC imposes no restrictions on any Independent Sales Agent participation

---

or sales activities in other businesses or programs other than DAC except as said activities or programs would cause or create a violation of any provision of Agent's agreement with [DAC] or any of the policies and procedures.

> 16. I understand that as an Independent Sales Agent, I am free to select my own means, methods, and manners of operation and that I am free to choose the hours and location of my activities under this Agreement subject only to the terms of this Agreement. **However, I must abide by all local, state, and federal laws.**

Given DAC independent agents' independent contractor status, STARLING fails to plead actual authority. Generally, an individual acting as an independent contractor does not have the traditional agency relationship with the principal necessary for vicarious liability. *See United States v. Bonds*, 608 F.3d 495, 505-06 (9th Cir. 2010); *see also Jones*, 866 F.3d at 1105. The allegations in the Complaint are insufficient to state a claim of actual authority. *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274, 2015 WL 3526253, at *7 (C.D. Cal. May 18, 2015) (no actual authority between the company and its third-party independent agents and authorized dealers where authorized dealers were independent contractors without any authority to bind the company); *Naiman*, 2017 WL 5882123, at *10-13 (same).

## 2. **STARLING's Allegations Regarding UNKNOWN CALLER Fail To Support The Inference That UNKNOWN CALLER Was DAC.**

STARLING attempts to pin the call on DAC, and strains to tie UNKNOWN CALLER to DAC. As explained in the discussion above, *see supra* at Parts I.A & I.B, STARLING does not allege or provide any facts to support his assertion that UNKNOWN CALLER is affiliated with

DAC. But even indulging STARLING's theory for a minute, the Complaint falls short of alleging that UNKNOWN CALLER was DAC's agent.

As explained above, *see supra* Part I.B, UNKNOWN CALLER is alleged to be DAC's employee even though she has zero facts to draw that conclusion. STARLING nevertheless makes a conclusory and irrelevant assertion related to UNKNOWN CALLER, including that it was DAC who was acting.

These statements create the smoke-screen of purported collaboration between UNKNOWN CALLER and DAC, but that is not enough. These statements still do not support a critical fact: that DAC had control over the method and means of UNKNOWN CALLER's promotional activities. Whatever UNKNOWN CALLER's alleged "affiliation" with DAC was, the Complaint alleges no facts to show it was DAC who phone or suggest that DAC exercised control over the means and methods by which UNKNOWN CALLER performed his services. Again, nothing suggests that DAC set particular requirements for UNKNOWN CALLER to follow as to the number of calls, hours of operation, type of equipment to use, the content of his conversations. There is not a suggestion that DAC had a right to control the results, let alone the methods and means of UNKNOWN CALLER's work. STARLING's vicarious liability allegations vis-à-vis UNKNOWN CALLER plainly fall below the plausibility threshold. *Employee Painters' Tr. v. McIntosh Mirror Door & Glass Inc.,* No. C13-0108, 2013 WL 2897970, at *2 (W.D. Wash. June 13, 2013) (finding that under the *Twombly/Iqbal* standard, it is not enough that a claim be merely "possible" or "conceivable"; instead, it must be "plausible on its face").

For all of the above reasons, STARLING fails to plead sufficient facts to support actual agency relationship between DAC and UNKNOWN CALLER.

### III. STARLING FAILS TO SHOW VIOLATION OF THE TEXAS BUSINESS & COMMERCE CODE.

In addition to not providing and proof to substantiate DAC is the responsible party for making alleged contacts, STARLING alleges that the caller is in violation of the TBCC by not having already obtained a registration certificate with the Secretary of State.   However, STARLING has provided no proof that they have in fact checked to see if UNKNOWN CALLER is in fact registered.  STARLING just assumes as she has done in other allegations that whoever the calling party was, they are in violation.

### CONCLUSION

When all of the shortcomings of STARLING's complaint are considered together, it is clear that the entire Complaint amounts to a collection of barebones and conclusory allegations that do not meet the applicable pleading standards. **STARLING's business phone number should not be afforded any protection under the TCPA; and STARLING offers absolutely no facts for the Court to be able to entertain either direct or vicarious liability claims against DAC; nor does STARLING demonstrate even that the caller was DAC; nor does STARLING demonstrate that the calling party had not already obtained an appropriate registration certificate required by TBCC.** The Court, therefore, must dismiss the claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

1 Copy for JUDGE

1 Copy TO FILE W/
                    CLERK

Answer + Motion TO
                    DISMISS

                    PLAINTIFF
SERVED TO ATTORNEY AS WELL

RECEIVE COMPLAINT JUNE 9, RES-
PONDED JUNE 23rd.

**Extremely Urgent**

This envelope is for use with the following services:

UPS Next Day Air®
UPS Worldwide Express℠
UPS 2nd Day Air®

To qualify for the Letter rate, UPS Express Envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express Envelopes containing items other than those listed or weighing more than 8 oz. will be billed by weight.

Do not use this envelope for:

UPS Ground
UPS Standard
UPS 3 Day Select®
UPS Worldwide Expedited®

**International Shipments**
The UPS Express Envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.

To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

**Note:** Express Envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.



UPS 2ND DAY AIR A.M.

TRACKING #: 1Z 342 17W 07 4603 9872

2A

FORT WORTH   TX 761 9-05

TX 761t8 384

SHIP US DISTRICT COURT
TO:   STE 310 - ROOM 310
501 W 10TH ST

DAVID ALTZ
2440 887-8882
1015 THCON
HIGHLAND MI 48357

0.5 LBS LTR 1 OF 1

RECEIVED
JUN 2 5 2021
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Serving you for more than 100 years
United Parcel Service.



International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

0121951131  4/14  PAC  United Parcel Service